## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**SHIRLEY BEZERRA STEEL and
JEFFREY STEEL, both individually
and as parents and guardians for
S.B.,**

      Plaintiffs,                Case No.: 6:21-cv-02035-CEM-GJK

v.

**BREVARD COUNTY SCHOOL BOARD,
BREVARD COUNTY PUBLIC SCHOOLS,
SUPERINTENDENT MARK MULLINS,
BREVARD COUNTY SCHOOL BOARD
CHAIRWOMAN MISTY BELFORD, CHERYL
McDOUGALL, JENNIFER JENKINS, KRISTEN
GODDEN, and NICHOLE DOUGHERTY,**

      Defendants.

_____/

## DEFENDANTS', MULLINS, BELFORD, MCDOUGALL AND JENKINS, AMENDED[1] MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION FOR JUDGMENT ON THE PLEADINGS AND INCORPORATED MEMORANDUM OF LAW

Defendants, **SUPERINTENDENT MARK MULLINS** ("Dr. Mullins"),

**BREVARD COUNTY SCHOOL BOARD CHAIRWOMAN MISTY**

**BELFORD** ("Belford"), **CHERYL MCDOUGALL** ("McDougall") and

**JENNIFER JENKINS** ("Jenkins") (collectively "Individual Defendants"),

pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c), and Local Rule 3.01, move to dismiss

---

[1] As authorized by this Court's February 22, 2022 Order, Defendants Dr. Mullins, Belford, McDougall, and Jenkins, file this Amended Motion to Dismiss Second Amended Complaint and Motion for Judgment on the Pleadings and Incorporated Memorandum of Law. (Doc. 35). The Motion has been amended to include the required conferral language pursuant to Local Rule 3.01.

or, in the alternative, move for judgment on the pleadings with respect to Counts I, V, VIII, IX, XI, and XII of the Second Amended Complaint. (Doc. 25).

## BACKGROUND

1.    On December 3, 2021, Plaintiff filed their initial Complaint. (Doc. 1). By order dated December 7, 2021, the Court, *sua sponte*, struck the Complaint for violating Rule 5.2(a)(3). (Doc. 6 and Doc. 7).

2.    On December 16, 2021, Plaintiffs filed the First Amended Complaint, containing thirteen counts. (Doc. 10).  Defendants filed a Motion to Dismiss the First Amended Complaint premised upon the complaint's numerous pleading deficiencies, which made it impossible for Defendants to raise substantive defenses to the claims raised therein. (Doc. 22).

3.    Thereafter, Plaintiffs filed the Second Amended Complaint (hereinafter "Complaint"), which is the subject of the instant motion. (Doc. 25). As to the Individual Defendants, the Complaint raises the following causes of action:

| Count | Claim |
|-------|-------|
| I | Violation of Right to Privacy—Art. I, s. 23, Florida Constitution |
| V | 42 U.S.C. § 1983-Substantive Due Process Violation |
| VIII | Violation of Rights Pursuant to Fla. Stat., § 393.13 |
| IX | 42 U.S.C. § 1983-Violation of Right to Direct the Medical and Mental Health Decision Making for Child |
| XI | Violation of Fla. Stat., § 1000.05 |
| XII | Intentional Infliction of Emotional Distress |

4.    All of the claims lack merit for the multiple reasons discussed below.

**WHEREFORE**, Defendants Dr. Mullins, Belford, McDougall and Jenkins, respectfully request entry of an Order dismissing Counts I, V, VIII, IX, XI, and XII

of the Second Amended Complaint with prejudice or, alternatively, that judgment on the pleadings be granted with respect to these Counts, together with such other and further relief this Court deems just and proper.

### FACTS[2]

Plaintiff, S.B., is a minor child with Down's Syndrome who has attended Ocean Breeze Elementary School since 2020. (Doc. 25 at ¶¶ 16, 17, 20). S.B. has an enlarged tongue and other unspecified "physical characteristics" which are contraindications for mask wearing. *Id.* at ¶¶ 18, 19. Since January of 2021, an Individual Education Plan ("IEP"), has been in place for S.B. *Id.* at ¶23.

On August 27, 2021, in response to the public health emergency caused by the COVID-19 pandemic and pursuant to the Florida Legislature's explicit authorization of the use of mitigation measures recommended by the Centers for Disease Control and Prevention ("CDC"), the Board enacted the "Emergency K-12 Face Covering Requirement" (hereinafter "Mask Policy"). Doc. 10-1 at 2[3]. The Mask Policy was consistent with CDC guidelines at the time that "explicitly recommended all individuals, students as well as staff, wear face coverings while inside whether they have been vaccinated or not, until the spread of COVID-19 [was] better controlled." *Id.* The Mask Policy included exceptions upon Medical

---

[2] The following facts are from the Complaint. No part of this motion or its factual recitation should be deemed an admission the facts pled are true.

[3] Attachments to the Complaint are properly considered at the Motion to Dismiss stage. *Porter v. Duval Cnty. Sch. Bd.*, No. 3:09–cv–285–J–32MCR, 2010 WL 1252177 at *2, n.8 (M.D. Fla. Mar. 26, 2010). To the extent that those Attachments contradict the conclusory allegations of the Complaint, the attachments control. *Id.* (citing *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007)).

Certification, IEP/504 documentation, for Students with Supervisors Approval, for Eating and Drinking, during Strenuous Physical Activity, during the Receipt of Healthcare, or during other Exigent Circumstances. *Id.* at 3. The Mask Policy became effective upon approval and included "a five-day grace period" for "those who need[ed] to obtain exemption documentation." *Id.* at 4.

Pursuant to S.B.'s medical conditions and her IEP, S.B. was exempt from the Mask Policy. Doc. 25 at ¶ 26. Mr. and Mrs. Steel did not file a medical exemption form with the school or request S.B.'s IEP be modified to include a mask exemption during the five-day grace period, but instead, "relied on the express language of the Mask [Policy] to their detriment and understood from the [Mask Policy] that S.B. would not be masked given her IEP and medical and physical contraindications." *Id.* at ¶ 28. Additionally, Mr. Steel "regularly made his objections" to the Mask Policy "known to school officials" and "was reassured that his . . . objection to S.B. being masked would be relayed to the school." *Id.* at ¶ 29.

Pursuant to the Mask Policy, and without specifically notifying Mr. and Mrs. Steel, Defendants Godden and Dougherty, had S.B. wear a mask at school. *Id.* at ¶ 30. The mask would frequently fall off due to the anatomy of S.B.'s ears and in an "attempt to keep the mask from falling off . . . S.B.'s teachers, including specifically but not limited to Ms. Godden and Ms. Dougherty, tied a mask to S.B.'s face using a blue cord or beading string," without first communicating or receiving approval from Mr. and Mrs. Steel. *Id.* at ¶¶ 34, 45.

4

Mr. and Mrs. Steel were first made aware that S.B. was wearing a mask at school when she exited the bus on October 7, 2021, with a mask on. *Id.* at ¶ 37. On October 12, 2021, Mr. and Mrs. Steel met with Principal Michaud regarding S.B. wearing a mask, who advised that S.B. had, in fact, been wearing a mask at school. *Id.* at ¶ 44. Principal Michaud explained that the school's policy was to require any student who did not have an exemption "on file" to adhere to the Mask Policy. *Id.* at ¶ 52. On October 13, 2021, the Steels attended a video conference with Defendant Godden and Principal Michaud, wherein S.B.'s IEP was amended to include that due to "S.B.'s physical and genetic concerns, and her speech impairment" she would be exempt from any mask policy. *Id.* at 47.

## MEMORANDUM OF LAW[4]

### I.    Official Capacity Claims Are Redundant and a Nullity

As this Court is aware, "official capacity suits generally represent only another way of pleading an action against the entity of which an officer is an agent." <u>*Brandon v. Holt*</u>, 469 U.S. 464, 472 n. 21 (1985). Suits against an individual acting in his official capacity impose liability on the governmental entity the official represents. *See* <u>*Busby v. City of Orlando*</u>, 931 F.2d 764, 776 (11th Cir. 1991). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit

---

[4] Because this Court is familiar with the standards of review governing this Motion, they are not restated herein.

against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Brandon*, 469 U.S. at 471-72).

"Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly . . . ." *Busby*, 931 F.2d at 776. Thus, when a suit is filed against both a governmental entity and its officers and employees in their official capacities, the trial court should dismiss the named individual defendants in their official capacities as "redundant and possibly confusing to the jury." *Id.*

The same analysis applies to the state law claims pled against the individual defendants in their official capacities. *See Braden Woods Homeowners Ass'n, Inc. v. Mavard Trading, Ltd.*, 277 So. 3d 664, 671 (Fla. 2d DCA 2019); s*ee also Kubany v. Sch. Bd. of Pinellas Cnty.*, 818 F. Supp. 1504, 1507 (M.D. Fla. 1993) (filing a Section 1983 claim against school board members and principal in their official capacities was improper, because the plaintiff had sued the school board directly).

Accordingly, to the extent Plaintiffs are pursuing official capacity claims against Dr. Mullins, Belford, McDougall and Jenkins*, while* simultaneously suing the School Board of which each is a part, these claims are due to be dismissed with prejudice.[5]

---

[5] To the extent Plaintiffs bring Count V against Defendants Dr. Mullins, Belford, McDougall and Jenkins in their official capacity, but not against the School Board, the Individual Defendants contend that Count V is redundant of Count IV, and should be dismissed for the reasons stated in

## II. Constitutional Claims (Counts I, V, and IX)

### A. *The Complaint Does Not Allege an Actionable Constitutional Violation*

#### i. Florida Constitution Right to Privacy

Plaintiffs bring a cause of action for violation of the Florida Constitution's right to privacy, asserting a claim for monetary damages. However, it is axiomatic that a claim for damages for a violation of the Florida Constitution cannot be maintained. *Holcy v. Flagler Cnty. Sheriff*, No. 3:05-CV-1324J-32HTS, 2007 WL 2669219 at *6 (M.D. Fla. Sept. 6, 2007); *see also Haney v. Garcia*, No. 8:13–cv–2928–T–36MAP, 2015 WL 1277991 at *3 (M.D. Fla. Mar. 20, 2015). Likewise, Article I, § 23 of the Florida Constitution contains no right to an award of attorneys' fees and costs for a prevailing party. *See Bidon v. Dep't of Prof'l Reg., Fla. Real Estate Comm'n*, 596 So. 2d 450, 452 (Fla. 1992).

#### ii. 42 U.S.C. § 1983

Plaintiffs bring two § 1983 claims, alleging substantive due process violations premised upon: (1) the Individual Defendant's alleged improper masking of S.B. and; (2) the Individual Defendant's alleged interference with the Steels' parental rights. Neither claim states a constitutional violation.

---

the School Board's Motion to Dismiss. Moreover, as the CEO of the School Board, suing the Superintendent, Dr. Mullins, in his official capacity is also superfluous. *See Kubany*, 818 F. Supp. at 1507 (filing a Section 1983 claim against school board members and principal in their official capacities was improper, because the plaintiff had sued the school board directly); *Johnson v. Dade Cnty. Pub. Sch.*, No. 91–2952–CIV–UUB, 1992 WL 466902 at *3 (S.D. Fla. Nov. 25, 1992) (suing school board and superintendent superfluous).

"Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Epperson v. Arkansas,* 393 U.S. 97, 104 (1968); *see Maddox v. Stephens*, 727 F. 3d 1109, 1119 (11th Cir. 2013). For purposes of substantive due process claims, "public schools do not have a special relationship with their students." *K.W. v. Lee Cnty. Sch. Bd.*, 67 F. Supp. 3d 1330, 1337 (M.D. Fla. 2014). In this non-custodial setting, "deliberate indifference is not sufficient to constitute a due process violation." *Id.*; *see Davis v. Carter*, 555 F.3d 979, 983-84 (11th Cir. 2009). "Allegations that a party failed to train, supervise, and discipline its employees" likewise do not rise to the level of a constitutional violation. *J.P.M. v. Palm Beach Cnty. Sch. Bd.*, 916 F. Supp. 2d 1314, 1323 (S.D. Fla. 2013).

"[C]onduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Maddox*, 727 F.3d at 1119 (quoting *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003)). "A deprivation is of constitutional stature if it is undertaken for improper motive and by means that were pretextual, arbitrary and capricious, and without rational basis." *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016) (citation omitted).

"Determinations of what is egregious conduct must not be made in the glow of hindsight." *Waddell*, 329 F.3d at 1305. Conduct intended to injure and unjustified by any government interest is most likely to be conscience-shocking. *Id.*

Significantly, "the Supreme Court 'has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" *Maddox*, 727 F.3d at 1120 (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)).  And courts must be especially careful in cases involving the assertion of parental liberty interests. *Id.*

### *(a)   Policy Adoption*

Throughout the Complaint, Plaintiffs challenge the Individual Defendant's "adoption and implementation" of the Policy. Taking the allegations of the Complaint as true, however, S.B. was exempt from the Mask Policy.  Accordingly, the harm alleged is not the result of the Mask Policy, but rather the allegedly improper implementation of the Mask Policy. Doc. 25 at ¶ 39 ("[i]n masking S.B. for six weeks, the Defendants violated their own policy."). For this reason, Plaintiffs lack standing to challenge the adoption of the Mask Policy. *See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976) ("a federal court [can] act only to redress injury that fairly can be traced to . . . the defendant," and not "the independent action of some third party").

Assuming, *arguendo*, they did, however, this Court's sister court has examined a Mask Policy similar to the one at issue and concluded that it did not implicate any fundamental constitutional rights and was rationally related to serve a legitimate government interest. *Lloyd v. Sch. Bd. of Palm Beach Cnty.*, No. 9:21-

cv-81715-KMM, 2021 WL 5353879, at *8-*14 (S.D. Fla. Oct. 29, 2021). The same conclusion is appropriate in this case.

### (b)   Policy Implementation

With respect to Plaintiffs' claims regarding the masking of S.B.[6] (Count V), the Complaint alleges that the Individual Defendants adopted and implemented "a policy that was shocking to the conscience" and acted with reckless disregard. Doc. 25 at ¶ 111.

As the Eleventh Circuit has explained: "Section 1983 must not be used as a 'font of tort law' to convert state tort claims into federal causes of action." *Peterson v. Baker*, 504 F.3d 1331, 1336 (11th Cir. 2007) (citation and internal quotations omitted). "Only in the limited context of due-process claims based on excessive corporal punishment has this court held that the intentional conduct of a high-school educator may shock the conscience." *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1378 (11th Cir. 2002).

In determining whether physical force constitutes corporal punishment, the key inquiry is "not what form the use of force takes," but "whether the use of force . . . is capable of being construed as an attempt to restore order, maintain

---

[6] To the extent Mr. and Mrs. Steel allege a cause of action for a substantive due process violation relating to the masking of S.B., separate and apart from their constitutional claims regarding their parental rights, they have failed to include any allegations in the Complaint regarding actions taken specifically against them. Accordingly, Count V is due to be dismissed with prejudice as to the Steels' in their individual capacity. *Porter*, No. 3:09–cv–285–J–32MCR, 2010 WL 1252177 at *4, n.8 (M.D. Fla. Mar. 26, 2010) (where parent alleges § 1983 claim, the "case turns upon whether plaintiff personally suffered any deprivation of a constitution right possessed by her personally," regardless of what happened to the child).

discipline, or protect [the student] from self-injurious behavior." _T.W., ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla._, 610 F. 3d 588, 599-600 (11th Cir. 2010).

Courts have considered claims involving both mask requirements and excessive restraint and concluded neither rose to the level of a substantive due process violation. Specifically, in _Lloyd_, the court concluded that "mask mandates are not conscience-shocking in a constitutional sense." 2021 WL 5353879, at *11 (internal quotes omitted) (collecting cases). Similarly, in _J.P.M. v. Palm Beach County School Board_, the court rejected a disabled student's claim for a substantive due process violation premised on the "School Board's acts of repeated physical restraints and acts of seclusion." The court did so despite the School Board's own acknowledgment that the plaintiff was "restrained a significant number of times." 916 F. Supp. 2d at 1323.

In this case, the well plead[7] factual allegations, in the light most favorable to the Plaintiffs, at most indicate that S.B.'s teachers knew or should have known that requiring S.B. to wear a mask could lead to injury, led to changes in her behavior, was in violation of the Board's Mask Policy, and was without the consent of her parents.  What the Complaint does _not_ state is that any person tied a mask on S.B. for an arbitrary purpose or with the intent to injure S.B. Indeed, the Mask Policy, which Defendants Godden and Dougherty were erroneously implementing as to S.B. at the time, was a "mitigation measure[]" intended to keep schools open, while

---

[7] _See Riha v. Polk Cnty. Sch. Dist._, No. 8:17–cv–787–T–33AAS, 2017 WL 2986227 at *4 (M.D. Fla. July 13, 2017) (the Court need not take conclusory allegations into consideration).

maintaining "the health and safety of students and school personnel." (Doc. 10-1 at 2). Accordingly, the Complaint does not allege a substantive due process violation as to masking S.B.

### (c)    *Parental Decision Making*

The Due Process Clause of the Fourteenth Amendment "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000). However, neither the School Board's adoption of the Mask Policy, nor the implementation of the policy implicated the Steels' fundamental parental rights.

The court rejected a similar argument in *Lloyd*, noting that other courts have "rejected arguments that the fundamental right of a parent to direct the upbringing of their children extends to the context of mask mandates." 2021 WL 5353879, at *9 (citing *Case v. Ivey*, 542 F. Supp. 3d 1245, 1281 (M.D. Ala. 2021) and *Oberheim v. Bason*, No. 4:21-CV-01566, 2021 WL 4478333 at *4 (M.D. Pa. Sept. 30, 2021)). The facts of this case, wherein the S.B. was exempt from the Mask Policy following the Steels' objection, offer no basis to expand substantive due process in light of the 11th Circuit's (and U.S. Supreme Court's) repeated cautions against doing so. *See, e.g.*, *Waddell*, 329 F.3d at 1304 (11th Cir. 2003) ("We must take seriously the Supreme Court's caution against expanding the concept of substantive due process").

## B.    *Supervisory Liability is Not Permitted by 42 U.S.C. § 1983*

Properly characterized, Plaintiffs' Section 1983 claims seek to hold the Individual Defendants liable based on nothing more than their supervisory status. Aside from Plaintiffs' allegations that these Defendants voted for and enforced an allegedly unconstitutional policy, Plaintiffs have not pointed to any specific act by Dr. Mullins, Belford, McDougall and Jenkins that violated Plaintiff's constitutional rights. Nor could they. This not only serves as a basis for qualified immunity [(See § II(C), *infra*)], but is also a separate and independent basis for dismissal.

While Plaintiffs may wish to impose § 1983 liability on everyone up and down the School District's supervisory chain for the actions about which they complain, without specific allegations of individual conduct that violates a constitutional right, the law prohibits Plaintiffs from casting their net so broadly. Moreover, while the Complaint's endeavors to tie these Defendants to the alleged violation of Plaintiffs' constitutional rights through boilerplate verbiage are not enough. *See* Ashcroft v. Iqbal, 556 U.S. 662, 680–81 (2009) (making clear that using "labels" and legal conclusions without the requisite allegations of fact is insufficient and conclusory allegations are not entitled to a presumption of truth); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564-565 (2007) ("Although in form a few stray statements speak directly of agreement, on fair reading these are merely legal conclusions resting on the prior allegations.").

Supervisory officials are not liable under § 1983 for the alleged unconstitutional acts of their subordinates on the basis of respondeat superior or

vicarious liability. _Hartley v Parnell_, 193 F.3d 1263, 1269 (11th Cir. 1999); _Belcher v. City of Foley_, 30 F.3d 390, 1396 (11th Cir. 1994). Indeed, "the mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability." _Monell v. Dep't of Soc. Servs. of N.Y._, 436 U.S. 658, 694 n.58 (1978) (citing _Rizzo v. Goode_, 423 U.S. 362, 370-371 (1976)).

"The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." _Doe v. Sch. Bd. of Broward Cnty., Fla._, 604 F.3d 1248, 1266 (11th Cir. 2010). Supervisory liability occurs only when the supervisor "personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." _Braddy v. Fla. Dep't of Labor & Emp. Sec._, 133 F.3d 797, 802 (11th Cir. 1998). To "set forth the limited circumstances in which a causal connection can be shown sufficient to render a supervisor liable on a § 1983 claim," the plaintiff must plead and ultimately establish:

> a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; when the supervisor's improper custom or policy leads to deliberate indifference to constitutional rights; or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

_Dunn v. Crews_, 2015 WL 4078190 at *3 (N.D. Fla. July 2, 2015) (quoting _Douglas v. Yates_, 535 F.3d 1316, 1322 (11th Cir. 2008)) (citation omitted). Additionally, only abuse that is "obvious, flagrant, rampant and of continued duration, rather

than isolated occurrences," is sufficiently widespread to put a supervisor on notice. _Doe_, 604 F.3d at 1266 (holding that knowledge of two complaints prior to incident was not sufficiently widespread for supervisor liability).

The Complaint is silent as to any allegations of "widespread abuse." Instead, Plaintiffs summarily allege that Dr. Mullins, Belford, McDougall and Jenkins "took actions adopting and implementing a policy that was shocking to the conscience, arbitrary, egregious, and with reckless disregard of the likelihood of causing physical harm . . . ." (Doc. 25 at ¶ 113). At best, the Complaint alleges, the Individual Defendants adopted the Mask Policy with reckless disregard of students' safety, the Principal knew S.B. was required by her teachers to wear a mask, but did not intervene, and Mr. Steel "regularly" expressed his general disagreement with the Mask Policy and with S.B. wearing a mask with "school officials," at S.B.'s school.

The Complaint includes no factual allegations that the Steels informed S.B.'s school that wearing a mask was dangerous to S.B.'s health or that they believed S.B. was automatically exempt from the Policy because of language within her IEP. Nor does the Complaint allege widespread failures to properly implement the Mask Policy as to other children or that the Individual Defendants either directed any employee to engage in unconstitutional conduct, or knew an employee was engaging in unconstitutional conduct, but failed to stop the employee.

Assuming that the principal's alleged failure to act is imputable to the Individual Defendants, one principal's failure to address misconduct, even if

negligent, is insufficient for purposes of supervisory liability. _Hackett v. Fulton Cnty. Sch. Dist._, 238 F. Supp. 2d 1330, 1359-60 (N.D. Ga. 2002).

### C.      Qualified Immunity Bars Plaintiffs' Section 1983 Claims

The Eleventh Circuit has cautioned that "courts should think long and hard before stripping defendants of immunity." _Lassiter v. Ala. A & M Univ._, 23 F.3d 1146, 1149 (11th Cir. 1994) (en banc). "[O]nly in exceptional cases will government actors have no shield against claims made against them in their individual capacities." _Id._ at 1149. The issue of whether qualified immunity applies is a question of law. _Skrtich v. Thornton_, 280 F.3d 1295, 1306 (11th Cir. 2002).

A public servant is entitled to immunity unless her act is "so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing." _Rehberg v. Paulk_, 611 F.3d 828, 838 (11th Cir. 2010) (quoting _Lassiter_). "[Q]ualified immunity is a defense not only from liability, but also from suit." _Pearson v. Callahan_, 555 U.S. 223, 232 (2009).

And, the protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." _Pearson_, 555 U.S. at 231 (internal quotations and citations omitted). Indeed, qualified immunity "operates as a shield against civil damages due to mistaken judgments." _Harris v. Coweta Cnty._, 21 F.3d 388, 390 (11th Cir.1994) (citing _Malley v. Briggs_, 475 U.S. 335, 343 (1986) and _Butz v. Economou_, 438 U.S. 478, 507 (1978)). Stated differently, qualified immunity

"gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014) (per curiam).

To receive qualified immunity, a public official must first establish that she "was acting within the scope of [her] discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194. If the defendant makes this showing, the burden shifts to the plaintiff to establish that qualified immunity is not appropriate. *Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1194 (11th Cir. 2002). To do so, a plaintiff must satisfy both prongs of the two-part test set forth by the Supreme Court: (1) that plaintiff has alleged a violation of a constitutional right; and (2) whether the right was "clearly established" at the time of the defendant's misconduct. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 236 and *Hope v. Pelzer*, 536 U.S. 730, 736 (2002)). The two steps in the two-pronged test may be considered in whatever order is deemed most appropriate for the case. *Pearson*, 555 U.S. at 241-242.

### i. The Individual Defendants Were Acting Within Their Discretionary Authority

"[A] government official proves he acted within his discretionary authority by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (internal quotations omitted); *Dang v. Sheriff, Seminole Cnty., Fla.*, 871 F.

3d 1272, 1279 (11th Cir. 2017) (stating that an official acts within her discretionary authority when her actions: (1) were undertaken "pursuant to the performance of [her] duties"; and (2) were "within the scope of [her] authority.") (quoting _Rich v. Dollar_, 841 F.2d 1558, 1564 (11th Cir. 1988)).

Pursuant to Fla. Stat., section 1001.41 a district school board, "after considering recommendations submitted by the district school superintendent," shall exercise, in pertinent part, the following general powers: "(1)  Determine policies and programs consistent with state law and rule deemed necessary by it for the efficient operation and general improvement of the district school system . . . and (5) Perform duties and exercise those responsibilities that are assigned to it by law or by rules of the State Board of Education or the Commissioner of Education and, in addition thereto, those that it may find to be necessary for the improvement of the district school system in carrying out the purposes and objectives of the education code." Unquestionably, the proposal and adoption of the Mask Policy was pursuant to these general powers and was, accordingly, within the Individual Defendants' discretionary authority. _See e.g._, _Parks v. City of Warner Robins, Ga._, 841 F.Supp. 1205, 1210 (M.D. Ga. 1994) (concluding that Mayor and city council were entitled to qualified immunity when adoption of city anti-nepotism policy was within discretionary authority and did not violate clearly established law); _B & L Prod., Inc. v. 22nd Dist. Ag. Ass'n_, 394 F.Supp.3d 1226, 1239 (S.D. Cal. 2019) (concluding officials were entitled to qualified immunity

18

where decision to propose or adopt a rule was not a violation of clearly established law).

### ii.    Plaintiffs Have Not Alleged a Violation of a Constitutional Right

For the reasons explained above, neither the adoption nor implementation of the Mask Policy violated Plaintiffs' constitutional rights. *See* § II A, *supra*.

### iii.    The Individual Defendants Did Not Violate Clearly Established Law

With respect to the second element, "[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotations omitted). As the Eleventh Circuit instructs, "[t]his second inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Lee*, 284 F.3d at 1194 (internal quotations omitted).

Here, the adoption and implementation of the Mask Policy did not violate clearly established law. As explained above, the Mask Policy was adopted pursuant to the Florida Legislature's explicit authorization of the use of mitigation measures recommended by the CDC. (Doc. 10-1 at 2). The Mask Policy was consistent with CDC guidelines at the time that "explicitly recommended all individuals, students as well as staff, wear face coverings while inside whether they have been vaccinated or not, until the spread of COVID-19 [was] better controlled." *Id.*

And, case law regarding school mask policies during a global pandemic can hardly be said to be well settled. In fact, some courts have held that allowing a parental opt out, as Plaintiffs would suggest is appropriate, violates the rights of disabled students—the opposite of the argument Plaintiffs advance here. *See e.g.*, *S.B. v. Lee*, No. 3:21-CV-00317-JRG-DCP, 2021 WL 4755619 (E.D. Tenn. Oct. 12, 2021) (granting preliminary injunction prohibiting governor from enforcing requirement to permit parental opt out of mask mandate).

## II. Disability Discrimination—Fla. Stat., § 1000.05 (Count XI)

### A. *Plaintiffs' § 1000.05 Claim Should Be Dismissed for Failure to Exhaust Administrative Remedies*

Plaintiffs claim pursuant to Fla. Stat., § 1000.05 is an improper attempt to circumvent the administrative exhaustion requirements of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"). The IDEA was created to provide federal assistance to all states that provide children with disabilities a free appropriate public education ("FAPE"). *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1280 (11th Cir. 2008).

When the gravamen of a lawsuit is the denial of the IDEA's guarantee of FAPE, exhaustion of administrative remedies is required. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 746 (2017). A plaintiff may not escape exhaustion requirements simply by bringing claims under statutes other than the IDEA, including Fla. Stat. § 1000.05 ("Florida's Education Equity Act"). *Id.* at 754; *see also T.W. v. Franklin Cnty. Sch. Bd.*, 4:16-CV-29-RH/CAS, 2016 WL 4536408 at *2 (N.D. Fla. Aug. 30,

2016) ("The exhaustion requirement also applies to claims under the Florida Educational Equity Act.").

In the instant matter, Plaintiffs have not alleged they exhausted administrative remedies; instead, they seek to avoid administrative exhaustion requirements by attempting to masquerade FAPE-based claims as a Florida statutory claim. However, the gravamen of their Florida Educational Equity Act Claim, is that S.B. was required to wear a mask, which was against her IEP and her parent's wishes, and as a result was denied services available to other students. These are exactly the types of claims that can be and must be addressed at an appropriate administrative proceeding in the first instance. *See T.W.*, 2016 WL 4536408, at *2 (explaining that where "claims all turn on the proposition that the IEP was not properly followed . . . a lawsuit based on that proposition cannot go forward because [plaintiff] did not exhaust his IDEA administrative remedies").

A similar challenge to the Florida Department of Health's Rule requiring school mask policies to include a parental opt-out provision (Doc. 10-2), was dismissed when the court concluded that the plaintiffs, disabled students and their parents, had failed to exhaust available administrative remedies. *See Hayes v. DeSantis*, No. 1:21-cv-22863-KMM, 2021 WL 4236698, at *6 (S.D. Fla. Oct. 29, 2021). Ultimately, the court found that the "unique problems facing [the] Plaintiffs" required unique solutions tailored to each child's "individual needs." *Id.* at *11.

Plaintiffs' claims, which are premised on S.B.'s individual and unique needs and characteristics, must similarly be pursued in the administrative realm in the first instance. Moreover, the Complaint itself, which details that Plaintiffs' concerns regarding masking were addressed, at least in part, through an amendment to S.B.'s IEP by the school, highlights that administrative relief would not be futile.

### B.    Plaintiffs' Claim Fails on the Merits

To allege a claim of intentional discrimination, the Florida Education Equity Act requires a showing of deliberate indifference on part of the defendant. *See C.P. v Leon Cnty. Sch. Bd.*, No. 4:03cv65-RH/WCS, 2005 WL 6074568, at *4 (N.D. Fla. Aug. 27, 2005). To that end, Plaintiff must demonstrate that an "appropriate person" had actual notice of Plaintiffs' discrimination and was deliberately indifferent to the discriminatory misconduct. *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 349 (11th Cir. 2012). "[S]chool administrators will only be deemed deliberately indifferent if their response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Doe*, 604 F.3d at 1259 (internal quotes omitted).

Here, the Complaint is devoid of any allegations that could be construed as intentional discrimination as to either S.B. or the Steels.  The Complaint makes clear, S.B. was required to wear a mask, not because of her disability, but because of her teachers' allegedly improper implementation of the Mask Policy—a policy that applied equally to every student.  And, the tie was used with the mask, not to

intentionally single out or harass, but to keep the mask from falling off, because the mask would "constantly fall off [S.B.'s] face and ono the ground which [was] a sanitary concern." (Doc. 25 at ¶ 45). And the Complaint includes no allegations as to the Steels in their individual capacities.

These allegations do not evidence either an intent to discriminate or that the school turned a blind eye toward any harassment or discrimination. At most, they represent a misunderstanding of the applicable policy in light of S.B.'s unique needs. _Gebser v. Lago Vista Indep. Sch. Dist_., 524 U.S. 274, 290 (1998). Indeed, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective or negligent do not amount to deliberate indifference." _Dallas Indep. Sch. Dist._, 153 F.3d at 219; _see also J.P.M._, 916 F. Supp. 2d at 1322 (rejecting ADA and 504 claims, construed similarly to Fla. Stat. §1000.05 claims, where there was no evidence of intentional discrimination or deliberate indifference).

## III.   Other State Law Claims (Counts VIII, XII)

### A.     S.B.'s Claim Under Fla. Stat. § 393.13(5) Fails

Section 393.13(5) "only imposes civil liability on the one who harms the victim and perhaps those who are vicariously liable for that person's actions." _Martin v. Sch. Bd. of Miami-Dade Cnty., Fla._, 10-22053-CIV-MORENO, 2011 WL 13268855, at *2 (S.D. Fla. Feb. 16, 2011) (internal quotes omitted).  The Complaint does not allege any actions on the part of the Individual Defendants other than that they adopted and implemented the Mask Policy. And, for the reasons explained above, the Individual Defendants are not vicariously liable for the actions of

Defendants Godden and Dougherty.  Accordingly, the Complaint fails to state a cause of action as to the Individual Defendants.

### B.    *Intentional Infliction of Emotional Distress Claim Fails on the Merits*

To state a claim for intentional infliction of emotional distress under Florida law, the Complaint must allege: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress (4) the distress was severe. *C.A.B. v. St. Lucie Cnty. Sch. Bd.*, No. 09-14296-CIV-GRAHAM/LYNCH, 2010 WL 11597188 at *6 (S.D. Fla. Apr. 16, 2010). For the reasons described in section II A, *supra*, the Individual Defendants' adoption and implementation of the Mask Policy in accordance with CDC guidelines in response to a global pandemic was not outrageous under the circumstances. Accordingly, Count XII should be dismissed with prejudice.

### LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned certifies Plaintiffs' Counsel were contacted by e-mail and telephone regarding the relief requested herein and is authorized to represent that Plaintiffs oppose the relief requested in this Motion as it seeks dismissal with prejudice of the claims contained within the Second Amended Complaint.

Dated this 1st day of March, 2022.

Respectfully submitted,

*/s/ Terry J. Harmon*
**TERRY J. HARMON**
Florida Bar Number: 0029001
tharmon@sniffenlaw.com
*/s/ Robert J. Sniffen*
**ROBERT J. SNIFFEN**
Florida Bar Number: 0000795
rsniffen@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Counsel for the Individual*
*Defendants and School Board*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 1st day of March, 2022, a true and correct copy of the foregoing was electronically filed in the US District Court, Middle District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Robert J. Sniffen*
**ROBERT J. SNIFFEN**

25