UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:   6:21-cv-2035

**SHIRLEY BEZERRA STEEL** and **JEFFREY STEEL**,
both individually and as parents and guardians
for **S.B.**, a minor child,

      Plaintiffs,

v.

**BREVARD COUNTY SCHOOL BOARD,**
**BREVARD COUNTY SCHOOL DISTRICT,**
**SUPERINTENDENT MARK MULLINS,**
**BREVARD COUNTY SCHOOL BOARD**
**CHAIRWOMAN MISTY BELFORD, CHERYL**
**McDOUGALL, JENNIFER JENKINS, KRISTEN**
**GODDEN,** and **NICHOLE DOUGHERTY,**

      Defendants.

_____/

**<u>PLAINTIFFS' THIRD AMENDED COMPLAINT</u>**

Plaintiffs, **SHIRLEY BEZERRA STEEL** and **JEFFREY STEEL,** both

individually and as parents and guardians for **S.B.,** a minor child, file this civil

action and respectfully request this Court award damages for violations of the

United States Constitution, Florida Constitution, Federal Statutes, and Florida

Statutes by Defendants, **BREVARD COUNTY SCHOOL BOARD, BREVARD**

**COUNTY SCHOOL DISTRICT, SUPERINTENDENT MARK MULLINS,**

**BREVARD COUNTY SCHOOL BOARD CHAIRWOMAN MISTY BELFORD,**

**CHERYL McDOUGALL, JENNIFER JENKINS, KRISTEN GODDEN,** and **NICHOLE DOUGHERTY**. In support thereof, Plaintiffs state:

### Jurisdiction and Venue

1.      Plaintiffs bring this action pursuant to 42 U.S.C. §1983 seeking redress for injuries suffered by Plaintiffs from deprivation of rights secured by the Fourteenth Amendment to the United States Constitution, by the laws of the United States and the laws of Florida. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§1331 and 1343(a). This Court has supplemental jurisdiction over the state law claims pled below.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and other applicable law because the events, acts, and omissions giving rise to the claims in this action arose in Brevard County, Florida, which is situated within the district and divisional boundaries of the Middle District of Florida. Venue is also proper in this Court because the Defendants reside or have their principal place of business in this District.

3.      An actual controversy exists between the parties involving substantial constitutional issues in that Plaintiffs allege that Defendants' policies, procedures, directives, and actions violated the United States and Florida Constitutions, federal law and Florida law, thereby violating Plaintiffs' rights and causing actual harm.

2

4.     This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including reasonable attorneys' fees, under 42 U.S.C. §1988 and the various Florida statues cited and relied upon below.

**Parties**

5.      Plaintiffs, Shirley Bezerra Steel, Jeffrey Steel, and S.B., a minor child, are residents of Brevard County, Florida. Shirley Bezerra Steel is the natural mother of S.B., and Jeffrey Steel is legal guardian and stepfather to S.B.. Unless otherwise specified below, all counts are brought on behalf of Plaintiffs, collectively, with Mr. and Mrs. Steel requesting relief both in their individual capacities and as natural guardians of S.B.

6.     At all times material hereto, S.B. was a seven-year-old minor child who has been diagnosed with developmental disabilities, including Down's Syndrome. As a result, she is a qualified individual with disabilities under the definitions of the Rehabilitation Act, 29 U.S.C. §794, Section 504 and the Americans with Disabilities Act, Title II, 42 U.S.C. §12131, et seq., and a member of a protected class under 42 U.S.C. §1981, et seq.

7.     Defendant, Brevard County School Board, is the governing body for public schools in Brevard County, Florida, with the authority to sue and be sued, and at all times material purported to be acting within the course and

3

scope of its authority pursuant to Article IX, §4 of the Florida Constitution, Fla. Stat. §§1001.41 - 1001.42 and further under color of state law.

8.      Defendant, Brevard County School District, is a governmental entity, organized under the laws of Florida, and is part of the state system of public education and includes all public school classes, courses of instruction, and all services and activities which are under the School District's officals' directions and directly related to education in the district. Brevard County School District is the public school district which directs and controls all public schools within Brevard County, Florida, with the authority to sue and be sued, and at all times material purported to be acting within the course and scope of its authority pursuant to Article IX, §4 of the Florida Constitution, Fla. Stat. §§1001.30 and further under color of state law.

9.      The Brevard County School Board and Brevard County School District (hereinafter "School Entities") are recipients of federal financial assistance by virtue of their receipt of funds for the education of disabled students in Brevard County from the United States Department of Education.

10.      Defendant, Mark Mullins, is the Superintendent of the Brevard County School District and works cooperatively and at the direction of the Brevard County School Board and at all times relevant hereto implemented and enforced the unlawful mask mandate adopted by the Brevard County School Board.

Plaintiffs bring this suit against Mr. Mullins in both his official and individual capacities, as Mr. Mullins violated Plaintiffs' clearly established, constitutionally-protected rights.

11.     Defendant, Mindy Belfort, is the Chairwoman of the Brevard County School Board and at all times relevant hereto voted to unlawfully mandate masks for all students enrolled in public schools within the Brevard County School District. Plaintiffs bring this suit against Ms. Belfort in both her official and individual capacities, as Ms. Belfort violated Plaintiffs' clearly established, constitutionally-protected rights.

12.     Defendant, Cheryl McDougall, is a Brevard County School Board Member and at all times relevant hereto voted to unlawfully mandate masks for all students enrolled in public schools within the Brevard County School District. Plaintiffs bring this suit against Ms. McDougall in both her official and individual capacities, as Ms. McDougall violated Plaintiffs' clearly established, constitutionally-protected rights.

13.     Defendant, Jennifer Jenkins, is a Brevard County School Board Member and at all times relevant hereto voted to unlawfully mandate masks for all students enrolled in public schools within the Brevard County School District. Plaintiffs bring this suit against Ms. Jenkins in both her official and individual

capacities, as Ms. Jenkins violated Plaintiffs' clearly established, constitutionally-protected rights.

14.     Defendant, Kristen Godden, is a teacher at Ocean Breeze Elementary and at all times relevant hereto was employed by the Brevard County School District and received direction from Defendants, Brevard County School District, Brevard County School Board, Superintendent Mark Mullins, Chairwoman Misty Belford, Cheryl McDougall, and Jennifer Jenkins. Defendant, Godden, acted in bad faith and in a manner exhibiting wanton and willful disregard of human rights and safety, and as such, Defendant, Godden, is personally liable for her conduct and the remaining Defendants are vicariously liable for her conduct. Plaintiffs bring this suit against Ms. Godden in both her official and individual capacities, as Ms. Jenkins violated Plaintiffs' clearly established, constitutionally-protected rights.

15.     Defendant, Nichole Dougherty, is a teacher at Ocean Breeze Elementary and at all times relevant hereto was employed by the Brevard County School District and received direction from Defendants, Brevard County School District, Brevard County School Board, Superintendent Mark Mullins, Chairwoman Misty Belford, Cheryl McDougall, and Jennifer Jenkins. Defendant, Dougherty, acted in bad faith and in a manner exhibiting wanton and willful disregard of human rights and safety, and as such, Defendant, Godden, is

6

personally liable for her conduct and the remaining Defendants are vicariously liable for her conduct. Plaintiffs bring this suit against Ms. Dougherty in both her official and individual capacities, as Ms. Dougherty violated Plaintiffs' clearly established, constitutionally-protected rights.

## Statement of Facts

16.  S.B. is a seven-year-old girl with Down's Syndrome.

17.  S.B. is non-verbal due to her Down's Syndrome.

18.  S.B. has physical characteristics related to her Down's Syndrome, including an enlarged tongue, that manifest as contraindications related to S.B.'s masking.

19.  At all times relevant and material hereto, the Defendants through Mr. Mullins, Ms. Godden, and Ms. Dougherty had actual and/or constructive knowledge of S.B.'s disabilities and were aware of her physical limitations and contraindications for mask wearing as documented in the Defendants' records and as observed by S.B.'s teachers

20.  Since 2020, S.B. has attended Ocean Breeze Elementary in Indian Harbour Beach, Florida.

21.  The Brevard County School District, and the officials thereof, transferred S.B. to Ocean Breeze given her Down's Syndrome and the school's focus on students requiring special accommodations. Ms.  Godden and Ms.

Dougherty were S.B.'s teachers during the 2021-2022 school year and had direct knowledge of S.B.'s conditions.

22.     Based upon information and belief, S.B.'s assignment to Ocean Breeze was made by Superintendent Mark Mullins or his designee based on the purported best interests of S.B.

23.     Given S.B.'s disability, the School District and Ocean Breeze Elementary implemented an Individualized Education Plan ("IEP") as early as January of 2021, S.B.'s IEP described her known physical and other deficits with specificity, meaning that Defendants had actual and/or constructive knowledge of the harm to be done to her through any forced masking.

24.     At all times material hereto, S.B.'s parents accompanied S.B. to the bus each morning and S.B. embarked on the bus to school mask-less, as was her parents' desire. S.B.'s parents were well aware of the risks posed by COVID-19, and chose to send S.B. to school without a mask based on her disabilities and an exercise of their right to make healthcare decisions for their daughter.

25.     Despite S.B.'s parents rights and their intended healthcare decisions for S.B., Defendants adopted and implemented a forced masking policy and tied a mask to S.B.'s face. Defendants put S.B. in grave danger without her parents' knowledge or consent, caused S.B. emotional distress, callously discriminated

against S.B. given her known disabilities, and violated Federal and State constitutional and statutory rights.

26. In early August 2021, the School Board considered a mask mandate despite having actual and constructive knowledge that the mandate was clearly unlawful, having been notified of its unlawfulness by at least two state agencies – Florida Department of Education ("FDOE") and Florida Department of Health ("FDOH") – and by Executive Order of the Governor. Executive Order 21-175 placed Defendants on notice that their Mask Mandate was unlawful, and emphasized that all parents have the right to make healthcare decisions for their minor children.

27. The Executive Order promulgated rules requiring that school boards and schools refrain from violating Floridians constitutional freedoms, violating parents' rights under Florida law to make healthcare decisions for their minor children, and third, protect children with disabilities who would be harmed by any forced masking policy. Through the Executive Order, dated July 30, 2021, Defendants, each and all of them, were on notice that any forced masking policy would be a clear violation of the law.

28. On August 10, 2021 special meeting, School Board Chair, Misty Belford, School Board members Cheryl McDougall and Jennifer Jenkins, and Superintendent Mark Mullins, attended a special meeting for the School Board to

decide on a Mask Mandate. Each of these individuals attended all such meetings where the Mask Mandate was discussed and ultimately adopted in violation of the law.

29.     At the August 10, 2021 special meeting, Chairwoman Belford made it abundantly clear that she was aware that the implementation of a Mask Mandate would violate the FDOH and FDOE rules and the Executive Order.

30.     At this and other meetings, Chairwoman Belford repeatedly acknowledged the illegality of a mask mandate, pointing out to Ms. Jenkins and Ms. McDougall that a Mask Mandate would violate the FDOE rule and FDOH's two rules prohibiting the forced masking of public school children.

31.     In another instance, Chairwoman Belford further acknowledged the illegality of the Mask Mandate by reading from a letter by FDOE Commissioner Richard Corcoran to the Leon County School Board, stating, "If this matter is not addressed by submitting the documentation establishing compliance with the law, the maximum accountability measures provided for under the law will be imposed."

32.     There is unequivocal evidence of Belford, McDougall, Jenkins, and Mullins' knowledge of the FDOE and FDOH rules, along with the Executive Order, and the illegality of the School Board's Mask Mandate. Despite repeated acknowledgment of the illegality, Chairwoman Belford and School Board

members McDougall and Jenkins voted to implement a Mask Mandate for all Brevard County public schools, including Ocean Breeze Elementary, where S.B. attended.

33.     On or about August 27, 2021, the Brevard County School Board adopted and then the Brevard County School District implemented (through, among others, Mr. Mullins, Ms. Godden, and Ms. Dougherty) an "Emergency K-12 Face Covering Requirement" (the "Mask Mandate").

34.     On September 3, 2021, the Florida Department of Education issued a letter to Superintendent Mark Mullins and the School Board, notifying Defendants that their Mask Mandate was a clear violation of the law, specifically, Emergency Rule 64DER21-12. Specifically, Brevard County failed to comply with the Emergency Rule in that it required parents to submit medical documentation in order to opt out.

35.     On September 21, 2021, at a Brevard County School Board Meeting, several School Board members, including Ms. Jenkins and the School Board's General Counsel, again acknowledged the illegality of the Mask Mandate, yet failed to bring the policy into compliance with State law.

36.     At the September 21, 2021 Brevard County School Board Meeting, the School Board's General Counsel informed the Defendant School Board members that if Brevard County schools did not comply with the FDOH Emergency Rule,

the Brevard County School Board would be subject to liability. Still, Defendants persisted.

37.    On September 22, 2021, the Florida Department of Health implemented Emergency Rule 64DER21-15 (attached hereto as **Exhibit A**) requiring that students be masked only at their parent's sole discretion.

38.    The Defendants did not challenge the validity of the Emergency Rule.

39.    The Defendants ignored the Emergency Rule in continuing to mask students enrolled in public schools within the Brevard County School District based on the Defendants' Mask Mandate rather than allowing parents the discretion to send their children to school unmasked.  More specifically, between September 22, 2021, and October 7, 2021, Defendants' forced masking of S.B. violated the State's Emergency Rule.

40.    S.B.'s IEP and medical and physical contraindications provide for an automatic exemption to the Mask Mandate. *See* Emergency K-12 Face Covering Requirement, attached hereto as **Exhibit B**.

41.    Specifically, the Emergency K-12 Face Covering Requirement provides, in pertinent part, the following:

Section 2. Exceptions to Required Face Coverings.

While maintaining social distancing (six [6] feet minimum) as much as feasible, a face covering is not required in the following instances:

12

Medical Certification - A face covering shall not be required for persons who present school district staff with a certification from a licensed health care provider that the person has a medical, physical, or psychological contraindication that prevents the person from being able to safely wear a face covering.

**IEP/504 – A face covering shall not be required for persons who have documented through an IEP or 504 plan that the person has a medical, physical, or psychological contraindication that prevents the person from being able to safely wear a face covering.**

(Emphasis added).

42.     The Plaintiffs followed the developments at the August and September School Board meetings closely, and were powerless to alter the unlawful actions of Defendants in adopting the Mask Mandate, yet the Plaintiffs relied on the express language of the Mask Mandate to their detriment and understood from the Brevard County School Board's written policy that S.B. would not be masked given her IEP and medical and physical contraindications.

43.     Dr. Steel regularly made his objections to the Defendants' Mask Mandate known to school officials and trusted that his objections to the Mask Mandate, and in particular his objection to S.B. being masked, would be relayed to the school. Additionally, S.B.'s parents knew that the Defendants had S.B.'s IEP on file and trusted that the School Board's written policy was being adhered to, as S.B. never arrived home with a mask, nor were they ever alerted that the

13

Defendants were ignoring S.B.'s IEP, their written policy, and tying a mask to S.B.'s face.

44.     Defendants, however, without notifying S.B.'s parents, began masking S.B. upon implementation of their Mask Mandate in all public schools within the Brevard County School District on or about August 30, 2021. These actions were physically carried out by Ms. Godden and Ms. Dougherty, and condoned by all Defendants.

45.     S.B. was masked without her parents' consent for approximately six weeks while attending Ocean Breeze Elementary between August 30, 2021, and October 7, 2021.

46.     At times, S.B. would remove her mask, or it would fall off, at which point S.B.'s teachers would tie the mask back on S.B.'s face.

47.     Each day, without ever getting Plaintiffs' consent to tie a mask on S.B., S.B.'s teachers (including Ms. Godden and Ms. Dougherty) tied a mask to S.B.'s face using a blue cord or beading string.

48.     Although S.B.'s teachers (including Ms. Godden and Ms. Dougherty) often notified S.B.'s parents of behavioral issues and habits in need of attention, including S.B.'s habit of removing her shoes, at no point did any of the Defendants, including S.B.'s teachers, mention to S.B.'s parents that the mask was being tied to her face or they were having difficulty keeping a mask on S.B.

14

49.   Each day, the Defendants condoned S.B.'s masking, and S.B.'s teachers, including specifically but not limited to Ms. Godden and Ms. Dougherty, removed S.B.'s mask before sending her home to her parents.

50.   Outrageously and shocking the conscience, during the period in which the Defendants masked S.B. without her or her parents' consent, S.B. threw up on at least one occasion, requiring her mother to pick S.B. up from school early. S.B.'s teachers intentionally hid the fact that S.B. has a mask tied to her face that day and that the unlawful mask was the cause of S.B.'s distress and physical illness.

51.   Had S.B.'s parents learned of the mask being tied to her face, they would have immediately objected and ordered the Defendants to cease masking S.B.

52.   Instead, S.B.'s parents first learned of S.B. having a mask tied to her face when she stepped off the school bus on the afternoon of October 7, 2021.

53.   Upon seeing S.B. masked, Shirley Bezerra Steel was upset and confused. S.B. was unable to voice her distress or communicate how long she had been masked without her parents' consent. The mask was soaked with saliva and soiled. Ms. Bezerra immediately informed her husband, Mr. Steel, of the inhumane masking.

54. Following Shirley's discovery of the mask being tied to S.B.'s face, the parents took photos of S.B. showing how the mask had been tied on when she stepped off the bus.

55. On October 12, 2021, Plaintiffs attended a meeting with Ocean Breeze Elementary Principal Shelley Michaud, who admitted that the forced masking of S.B. had occurred repeatedly without S.B.'s parents' knowledge or consent.

56. On October 13, 2021, the Steels attended a video conference with Ms. Godden and Principal Michaud regarding the forced masking of S.B. During the video conference, Ms. Godden noted that due to S.B.'s disabilities, she has "trouble paying attention and is easily distracted by her mask. The anatomy of her ears causes the mask to constantly fall off her face and onto the ground which is a sanitary concern. S.B. also has speech and language impairments that are adversely affected by the mask and her ability to make progress in those areas."

57. S.B.'s parents were outraged. They reminded Principal Michaud and Ms. Godden that because S.B. has an enlarged tongue, a mask presented a health danger and could cause her to suffer from breathing problems. S.B.'s parents also expressed concern with S.B.'s ability to communicate her distress if the mask restricted her breathing, or made her nauseous or otherwise ill, as it had.

58. After the video conference between the Steels, Ms. Godden, and Principal Michaud, S.B.'s IEP was belatedly updated based on the determination

16

that due to "S.B.'s physical and genetic concerns, and her speech impairment" that she would be exempt from any Mask Mandate. Defendants had full knowledge of S.B.'s physical and genetic concerns, as well as her speech and language impairments, at all times and undoubtedly as early as her first day of school at Ocean Breeze, and failing to accommodate S.B. was a clear violation of law.

59.     The Brevard County School Board purportedly "limits the use of restraint in the education and discipline of students with disabilities to circumstances in which the strategy can be used safely in a manner that is in the best interests of the student with a disability."

60.     Upon S.B.'s parents protesting and confronting the Defendants after learning what had been done to their daughter, Ms. Jenkins made defamatory statements on a public forum in an effort to discredit and harm Plaintiff Jeffrey Steel.

61.     In contravention of the Brevard County School Board's policy, S.B. was restrained in a manner with a mask tied to her face that was dangerous to her health and indisputably not in her best interests.

62.     During a criminal investigation opened by the Indian Harbour Beach Police Department, several school officials in interviews with the IHB PD Detective corroborated that S.B. was forcibly masked for approximately six weeks while at school and that her parents were never notified of the masking.

63.     Principal Michaud admitted that the school's policy and her directive would have been to contact S.B.'s parents before masking S.B. and that this never happened.

64.     Principal Michaud further admitted that the Defendants' expectation of teachers is that they enforce the Mask Mandate for anyone without an exemption "on file", regardless of whether students qualify for an exemption under the Mask Mandate and irrespective of Florida DOH Emergency Rule 64DER21-15, federal law, and human decency. The Defendants never made any attempt to notify S.B.'s parents of this unwritten rule prior to tying a mask to S.B.'s face.

65.     Exemptions were never required under the State's Emergency Rule, nor the Mask Mandate, and Principal Michaud's admission demonstrates improper training and supervision.

66.     During the six weeks that S.B. was forcibly masked, S.B. was in distress due to the Defendants' forced masking but was unable to voice her concerns given that S.B. was and is non-verbal and suffers from other developmental deficits well-known to Defendants.

67.     S.B. suffered from behavioral disturbances during the six weeks that she was masked without her parents' consent. S.B. was potty trained, but during this forced masking period had several accidents in the classroom. S.B.'s teachers,

Ms. Godden and Ms.  Dougherty, instructed S.B.'s parents to send a change of clothes with her during this period, and when pressed for a reason for S.B.'s regression, Defendants still intentionally concealed their forced masking of S.B.

68.     In addition to S.B.'s unexplained regression as described above, S.B. exhibited other signs of severe distress and/or illness caused by Defendants' forced masking. During this period of forced masking, S.B. vomited on at least one occasion to the parents' knowledge, and still intentionally concealed their forced masking. After S.B. vomited at school, Ms. Bezerra was asked to pick her daughter up early as a result of the vomiting. At no time did Defendants Godden and Dougherty, nor any other school official, notify the parents that they had tied a mask to S.B. that day while at school, and in fact Defendants Godden and Dougherty removed the mask and concealed the most likely cause of S.B.'s vomiting from the parents. S.B. was required to remain at home for the next twenty-four hours at the Defendants' direction, and she exhibited no signs of underlying illness during that twenty-four-hour period. The Defendants are vicariously liable for the conducts of Defendants Godden and Dougherty.

69.     Mr. Steel and Ms. Bezerra took S.B. to her pediatrician that afternoon for examination, and the physician found no signs of illness present in S.B. Thereafter, S.B. was given a note to return to school the next day. Due to

Defendants' intentional concealment, Mr. Steel and Ms. Bezerra remained confused as to what was going on with S.B.

70.     The degradation in S.B.'s behavior was documented by S.B.'s teachers and observed by her parents.

71.     Immediately after the forced masking of S.B. was discovered by her parents and the school agreed to stop tying a mask to S.B.'s face, S.B.'s behavior began to dramatically improve. Since leaving Ocean Breeze Elementary School, S.B. has not had any accidents at her new school, at home, or on any outing. There has been no account of vomiting, and her behavior at home and in school has improved substantially. These marked improvements conclusively demonstrate the entirely avoidable harm caused to S.B. and her parents through the Defendants' unlawful policy.

**Count I - Violation of Right of Privacy as Against All Defendants**

72.     Plaintiffs hereby reassert by reference in this Count I the allegations of Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

73.     Under Article 1, Section 23 of the Florida Constitution, "the State may not intrude upon the parents' fundamental right to raise their children except in cases where the child is threatened with harm." *Von Eiff v. Azicri*, 720 So.2d 510 (Fla. 1998).

20

74.     "The Board recognizes that students possess not only the right to an education but the rights of citizenship as well. Federal and State law prohibit the Board from adopting any policy or rule, or from entering into any agreement, that infringes upon or waives the rights of freedoms afforded to students by the United States Constitution." *See,* BPS Policy 5780 - Student Rights.

75.     Plaintiffs, as Floridians, enjoy an explicit right of privacy under Article 1, §23 of the Florida Constitution, which provides in pertinent part that, "[e]very natural person has the right to be let alone and free from governmental intrusion into his private life."

76.     As set forth more fully *supra*, Defendants have intentionally intruded upon Plaintiffs' fundamental right to raise their child by adopting and implementing a Mask Mandate, and more specifically by inhumanely masking S.B. against the direct exemption granted by the School District.

77.     A rule requiring a child to alter his or her physical appearance in a fundamental way, i.e., covering their face and thereby masking their identity, is a clear invasion of the child's bodily autonomy, i.e., privacy.

78.     A rule requiring a child to involuntarily use unnecessary garments or medical devices that implicate personal medical decisions is a clear invasion of the child's bodily autonomy, i.e., privacy, and where the rule affects a child,  the rule

21

is a clear invasion of the parents' right of privacy and right to make medical decisions for their child.

79.     A rule requiring a child to disclose the existence of medical conditions unrelated to the specific disease that the governmental agency is trying to mitigate is a clear and absolute violation of the child's privacy.

80.     A rule requiring a parent to disclose the existence of medical, physical, psychological, or other health conditions affecting their child and unrelated to the specific disease to be mitigated is a clear and absolute violation of the parent's privacy.

81.     A rule requiring parents and children to disclose the existence of medical, physical, psychological, or other health conditions of which a governmental agency would otherwise remain unaware were it not for the compulsory disclosure is an egregious violation of both the parent's and the child's right to privacy.

82.     Defendants' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

83.     Defendants' unconstitutional Mask Mandate is and was a radical infringement on the well-settled constitutional and human right to privacy shared by all Floridians, which includes our rights to self-determination, bodily

autonomy, medical freedom, and liberty. *State v. J.P.*, 907 So. 2d 1101, 1115 (Fla. 2004).

84.    Plaintiffs are entitled to damages for the Defendants' deprivation of their fundamental rights.

85.    As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiffs have suffered, both general and special damages, past and future, through deprivation of Constitutional rights, bodily injury and resulting pain and suffering, post-traumatic stress disorder, severe physical and emotional distress, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, aggravation of a pre-existing condition, medical expenses, and other special damages in the form of psychological counseling and tuition expenses.

**COUNT II –Violation of Section 504 of the
Rehabilitation Act of 1973, 29 U.S.C. §706 as Against the School Entities**

86. Plaintiffs hereby reassert by reference in this Count II the allegations of Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

87. Section 504 of the Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability" shall be "excluded, denied, or discriminated against" by any facility receiving "federal financial assistance." 29 U.S.C. §794.

88. Plaintiff, S.B.'s, Down's Syndrome and other conditions substantially limit major life activities. Accordingly, S.B. is considered to be an individual with a disability under Section 504 of the Rehabilitation Act, as amended. *See* 29 U.S.C. §706(8). Plaintiff, S.B., is otherwise qualified under Section 504 of the Rehabilitation Act because she meets the essential eligibility requirements for the School Entities' services at all time material hereto. Plaintiffs Mr. and Mrs. Steel may not be, and were, treated differently or discriminated against because their daughter, S.B., has a disability. Furthermore, the School Entities are recipients of federal financial assistance.

89. The facts set forth in full herein demonstrate that the School Entities knowingly and intentionally allowed S.B. to be masked against her will, her parents' will, and against the IEP maintained by the School Entities.

90. The Defendant School Entities failed to obtain consent for S.B.'s masking, failed to take action and/or intervene in her masking knowing that it was contraindicated by her IEP and prohibited by state law, and further knew that S.B.'s masking put her at risk of serious harm, i.e., restricting her breathing. Further, the Defendant School Entities adopted and implemented a policy foreseeably resulting in the inhumane masking S.B. without regard to her speech and language impediments.

91.     In addition to, or in the alternative, the facts as set forth herein demonstrate that the School Entities acted with gross misjudgment as to education and supervision of services to S.B. Specifically, the School Entities knowingly allowed S.B. to be masked against her will and contraindications set forth in her IEP, failed to communicate with and obtain S.B.'s parents' consent prior to her being forcibly masked, failed to train their employees so as to avoid causing unnecessary harm and violating basic rights, failed to investigate and respond to S.B.'s masking, and failed to take action and/or intervene knowing S.B. was at risk of serious harm.

92.     The School Entities, while acting individually and in concert and under color of state law, violated Plaintiffs' rights arising under the Rehabilitation Act in a discriminatory manner by failing to properly plan for, coordinate, communicate, disseminate, and provide Plaintiffs with a proper, safe, and free appropriate public education, special education, equipment, assistive technology devices and services, and all entitlements provided by the Rehabilitation Act and failing to accommodate properly and safely Plaintiff S.B.'s disabilities, this excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs to discrimination under the ESE program provided by the School Entities by virtue of S.B.'s disabilities.

93.     The School Entities, while acting individually and in concert and under color of state law, conducted themselves in a manner that was professionally unjustifiable and constituted gross misjudgment. Specifically, the School Entities violated Plaintiff S.B.'s rights arising under the Rehabilitation Act in a discriminatory  manner by failing to properly plan for, coordinate, communicate, disseminate, and provide Plaintiff with a proper, safe, and free appropriate public education, special education, equipment, assistive technology devices and services, and all entitlements provided by the Rehabilitation Act and failing to accommodate properly and safely Plaintiff's disabilities, thus excluding Plaintiff from participation in, denying Plaintiff the benefits of, and subjecting Plaintiff to discrimination under the ESE program provided by the School Entities by virtue of their disabilities.

94.     The School Entities' policies, practices, and customs, particularly the actions and omissions described herein above, violated Plaintiffs' rights under Section 504 of the Rehabilitation Act by discriminating on the basis of S.B.'s disability.

95.     Plaintiffs have suffered severe physical and emotional distress, pain and suffering and are entitled to damages due to the School Entities' violation of Section 504 of the Rehabilitation Act of 1973.

26

96.     As a direct and proximate result of the aforementioned acts and/or omissions of the Defendant School Entities, Plaintiffs have suffered, both general and special damages, past and future, through deprivation of Constitutional rights, bodily injury and resulting pain and suffering, post-traumatic stress disorder, severe physical and emotional distress, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, aggravation of a pre-existing condition, medical expenses, and other special damages in the form of psychological counseling and tuition expenses.

97.     Plaintiffs also pray that this Court award damages in the form of reasonable attorneys' fees and costs as provided in Section 504 of the Rehabilitation Act.

## COUNT III – Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 as Against the School Entities

98.     Plaintiffs hereby reassert by reference in this Count III the allegations of Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

99.     Title II of the Americans with Disabilities Act is known as the "Prohibition Against Discrimination and Other Generally Applicable Provisions." 42 U.S.C. §12131, et seq.

100.    Plaintiff, S.B.'s, Down's Syndrome and other conditions substantially limit major life activities. Therefore, Plaintiff S.B. is considered to be an individual

with a disability under Title II of the Americans with Disabilities Act because she meets the essential eligibility requirements for the Defendant School Entities' services at all times material hereto. Plaintiffs Mr. and Mrs. Steel may not be, and were, treated differently or discriminated against because their daughter, S.B., has a disability.

101.   The School Entities' policies, practices, and procedures, particularly the actions and omissions described hereinabove, violated Plaintiffs' rights under Title II of the American with Disabilities Act, 42 U.S.C. §12131, et seq., including discriminating against them on the basis of S.B.'s disability.

102.   The facts set forth in full herein demonstrate that the School Entities knowingly and intentionally allowed teachers and/or staff to be responsible for masking Plaintiff S.B.; failed to communicate with and obtain S.B.'s parents' consent prior to her being forcibly masked; failed to investigate and respond to S.B.'s masking; failed to take action and/or intervene knowing that the school was using unlawful and egregious restraint methods; and further knew that such failures put S.B. at risk of serious harm.

103.   In addition to, or in the alternative, the facts as set forth herein demonstrate that the School Entities acted with gross misjudgment as to education and provision of services to Plaintiffs. Specifically, the School Entities knowingly

28

and intentionally allowed teachers and/or staff to be responsible for masking Plaintiff, S.B.; failed to train its employees so as to avoid causing unnecessary harm and violating basic rights; failed to investigate and respond to S.B.'s masking; failed to take action and/or intervene knowing that the school was using unlawful and egregious restraint methods, and further knew that such failures put S.B. at risk of serious harm.

104.   The School Entities, while acting individually and in concert and under color of state law, violated Plaintiff, S.B.'s, rights arising under the Americans with Disabilities Act in a discriminatory manner by failing to properly plan for, coordinate, communicate, disseminate, and provide Plaintiff with a proper, safe, and free appropriate public education, special education, equipment, assistive technology devices and services, and all entitlements provided by the Rehabilitation Act and failing to accommodate properly and safely Plaintiff's disabilities, thus excluding Plaintiff from participation in, denying Plaintiff the benefits of, and subjecting Plaintiff to discrimination under the ESE program provided by the School Entities by virtue of S.B.'s disabilities.

105.   The School Entities, while acting individually and in concert and under color of state law, conducted itself in a manner that was professionally unjustifiable and constituted gross negligence. Specifically, the School Entities violated Plaintiff, S.B.'s, rights arising under the Americans  with Disabilities and

Rehabilitation Acts in a discriminatory manner by failing to properly plan for, coordinate, communicate, disseminate, and provide Plaintiff with a proper, safe, and free appropriate public education, special education, equipment, assistive technology devices and services, and all entitlements provided by the Rehabilitation Act and failing to accommodate properly and safely Plaintiff's disabilities, thus excluding Plaintiff from participation in, denying Plaintiff the benefits of, and subjecting Plaintiff to discrimination under the ESE program provided by the School Entities by virtue of S.B.'s disabilities.

106.   The School Entities' policies, practices, and customs, particularly the actions and omissions described hereinabove, violated Plaintiff, S.B.'s, rights under the Americans with Disabilities Act by discriminating at least in part on the basis of her disability.

107.   The School Entities also denied Plaintiffs services they made available to non-disabled students and the parents thereof, including unhindered attendance at public school, coordination with and consent of non-disabled students' parents regarding significant changes to their behavior and individualized education plans, and participation in speech and language therapies without a mask tied to non-disabled students' faces.

108.    Plaintiffs have suffered severe physical and emotional distress, pain and suffering and are entitled to damages due to the School Entities' violations of Title II of the Americans with Disabilities Act.

109.    As a direct and proximate result of the aforementioned acts and/or omissions of the Defendant School Entities, Plaintiffs have suffered, both general and special damages, past and future, through deprivation of Constitutional rights, bodily injury and resulting pain and suffering, post-traumatic stress disorder, severe physical and emotional distress, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, aggravation of a pre-existing condition, medical expenses, and other special damages in the form of psychological counseling and tuition expenses.

110.    Plaintiffs also pray that this Court award damages in the form of reasonable attorneys' fees and costs as provided under the Americans with Disabilities Act.

**COUNT IV – Violation of 42 U.S.C. §1983 as Against the School Entities**

111.    Plaintiffs hereby reassert by reference in this Count IV the allegations of paragraphs 1 through 71 of this Complaint as if fully set forth herein.

112.    This is a civil rights action for money damages against the School Entities pursuant to Title 42 U.S.C. §1983 for deprivation of Plaintiffs'

31

constitutional civil rights and their Fourteenth Amendment due process liberty interest. As more fully described above, the School Entities had actual or constructive knowledge during Plaintiff S.B.'s enrollment and attendance at Ocean Breeze Elementary that its employees, agents, and administrators were engaged in conduct that posed a foreseeable, pervasive, and unreasonable risk of constitutional injury to Plaintiffs.

113.    The Fourteenth Amendment liberty interest includes the right to be free from unnecessary and unreasonable force or intentional, reckless, or deliberately indifferent or oppressive conduct that causes emotional or psychological harm.

114.    At all times material hereto, the School Entities failed to properly train their employees and agents on how to work with Plaintiffs to protect S.B. from exposure to unlawful maltreatment in violation of their civil rights described herein. Specifically, the School Entities knowingly and intentionally allowed teachers and/or staff to be responsible for masking Plaintiff, S.B.; failed to communicate with and obtain the consent of S.B.'s parents prior to forcibly masking S.B.; failed to train its employees so as to avoid causing unnecessary harm and violating basic rights; failed to investigate and respond to S.B.'s masking; failed to take action and/or intervene knowing that the School Entities were using

unlawful and egregious restraint methods; and further knowing that such failures put S.B. at risk of serious harm.

115.   By establishing the aforementioned patterns and practices, and further failing to respond to its actual or constructive knowledge regarding the misconduct set forth herein, the Defendant School Entities demonstrated recklessness and deliberate indifference to Plaintiffs' constitutional rights, and tacit authorization of the abusive and inhumane culture they created.

116.   The School Entities response and/or lack of response to its actual or constructive knowledge regarding the misconduct by its employees, agents, and administrators demonstrated recklessness, deliberate indifference to Plaintiffs' constitutional rights and tacit authorization of the misconduct of its agents, staff, and administrators including Mullins, Belford, McDougall, Jenkins, Godden, and Dougherty.

117.   The School Entities failed to act in response to its actual or constructive knowledge and affirmatively caused the injury suffered by Plaintiffs. The School Entities were deliberately indifferent to, permitted, and tolerated a pattern and practice of unjustified, unreasonable, and inappropriate treatment of special needs children, which is unjust, atrocious, and shocks the conscience.

118.   Plaintiffs have suffered severe physical and emotional distress, pain and suffering and are entitled to damages due to the Defendant School Entities' deprivation of Plaintiffs' Constitutional rights.

119.   As a direct and proximate result of the aforementioned acts and/or omissions of the Defendant School Entities, Plaintiffs have suffered, both general and special damages, past and future, through deprivation of Constitutional rights, bodily injury and resulting pain and suffering, post-traumatic stress disorder, severe physical and emotional distress, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, aggravation of a pre-existing condition, medical expenses, and other special damages in the form of psychological counseling and tuition expenses.

120.   Plaintiffs also pray that this Court award damages in the form of reasonable attorneys' fees and costs as provided under 42 U.S.C. §§1983 and 1988.

**COUNT V – Violation of 42 U.S.C. §1983 as Against Superintendent Mark Mullins, Chairwoman Misty Belford, Cheryl McDougal, and Jennifer Jenkins**

121.   Plaintiffs hereby reassert by reference in this Count V the allegations of Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

122.     This is a civil action for money damages against Defendants, Mullins, Belford, McDougall, and Jenkins pursuant to Title 42 U.S.C. §1983 for deprivation of Plaintiffs' constitutional civil rights and her Fourteenth Amendment due process liberty interest.

123.     Defendants, Mullins, Belford, McDougall, and Jenkins took actions in adopting and implementing a policy that was shocking to the conscience, arbitrary, egregious and with reckless disregard of the likelihood of causing physical harm, pain, suffering and/or emotional or psychological trauma to Plaintiffs in violation of, and with deliberate indifference to, their Fourteenth Amendment due process liberty rights protected by the U.S. Constitution.

124.     The Fourteenth Amendment liberty interest includes the right to be free from unnecessary and unreasonable force or intentional, reckless, or deliberately indifferent or oppressive conduct that causes emotional or psychological harm.

125.     Defendants, Mullins, Belford, McDougall, and Jenkins failed to consider and or disregarded the constitutional rights of Plaintiffs in adopting and implementing a policy condoning and encouraging oppressive conduct causing Plaintiffs emotional and psychological harm.

126.     As a direct and proximate result of Defendants', Mullins, Belford, McDougall, and Jenkin's misconduct, Plaintiffs have suffered damages in the form of deprivation of rights and severe physical and emotional distress, pain and suffering.

127.     As a direct and proximate result of the aforementioned acts and/or omissions of Defendants named within this Count V, Plaintiffs have suffered, both general and special damages, past and future, through deprivation of Constitutional rights, bodily injury and resulting pain and suffering, post-traumatic stress disorder, severe physical and emotional distress, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, aggravation of a pre-existing condition, medical expenses, and other special damages in the form of psychological counseling and tuition expenses.

128.     Plaintiffs also pray that this Court award damages in the form of reasonable attorneys' fees and costs as provided under 42 U.S.C. §§ 1983 and 1988.

### COUNT VI – Negligence as Against the School Entities

129.     Plaintiffs hereby reassert by reference in this Count VI the allegations of Paragraphs 1 through 59 of this Complaint as if fully set forth herein.

130.    The School Entities were responsible for the operation and maintenance of Ocean Breeze Elementary School and as such, owed a duty to Plaintiffs to exercise reasonable care in the operation of Ocean Breeze Elementary School, particularly with regard to the supervision of Plaintiff S.B., so as to protect her from unlawful abuse, restraint, and seclusion, and to protect the constitutionally-protected parental rights of S.B.'s parents.

131.    Particularly, the School Entities owed a duty to Plaintiffs to exercise reasonable care and/or ensure safe conditions and supervision. The exercise of such duties includes, but is not limited to, the following:

(a)    Supervising students so as to protect them from abuse, improper, and/or excessive restraint and seclusion;

(b)    Training and/or supervising its teachers and employees as the appropriate methods for the discipline, restraint, safety, and supervision of its students; and

(c)    Implementation and enforcement of adequate safety procedures to ensure that students are free from abuse, improper, and/or excessive restraint, and seclusion

132.    The School Entities breached their aforementioned duties and deviated from the applicable standards of care, by virtue of its conduct described hereinabove, and particularly the School Entities failed to:

(a)    Properly supervise its students, namely Plaintiff, S.B., so as to protect her from abuse, improper and/or excessive restraint and seclusion;

(b)     Properly train and/or supervise its teachers and employees as to the appropriate methods for the discipline, restraint, safety, and supervision of its students; and

(c)     Implement and enforce adequate safety procedures in order to ensure that students were free from abuse, improper and/or excessive restraint, and seclusion.

133.     As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiffs have suffered, both general and special damages, past and future, through deprivation of Constitutional rights, bodily injury and resulting pain and suffering, post-traumatic stress disorder, severe physical and emotional distress, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, aggravation of a pre-existing condition, medical expenses, and other special damages in the form of psychological counseling and tuition expenses.

## COUNT VII – Negligent Hiring, Training, Retention, and/or Supervision as to the School Entities

134.     Plaintiffs hereby reassert by reference in this Count VII the allegations of Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

135.     The School Entities are responsible for the hiring, training, instruction, supervision, and discipline of its teachers, employees and/or

agents who were at all times acting within the scope of their employment and/or agency.

136.    The School Entities were negligent in its hiring, training, instruction, supervision, and discipline of its teachers, employees and/or agents.

137.    Prior to October 2021, the School Entities knew or should have known that its employees and/or agents including, but not limited to, Ms. Godden and Ms. Dougherty, and Ocean Breeze Elementary Principal Michaud, along with the instructional aides in S.B.'s classroom and present on the bus, did not have adequate or appropriate training and/or certification to handle proper restraint and/or masking procedures while working at public schools in Brevard County, Florida.

138.    As a result, the School Entities were aware, or should have been aware, of these teachers' and/or employees' unfitness for continuing employment with the School Entities.

139.    The School Entities owed a duty to Plaintiffs with regard to: (a) conducting the proper investigation and due diligence before hiring the aforementioned employees and/or agents; (b) discharging the aforementioned employees and/or agents prior to October 2021; (c) ensuring the safety of

Plaintiff S.B. while she was enrolled at Ocean Breeze Elementary, a Brevard County public school; (d) properly training employees and/or agents in their provision of services to Plaintiffs; and (f) ensuring Plaintiff S.B. was not harmed, assaulted, or battered by employees and/or agents of the School Entities.

140.    The School Entities breached their aforementioned duties by virtue of their conduct described hereinabove, and particularly the School Entities failed to: (a) conduct the proper investigation and due diligence before hiring the aforementioned employees and/or agents; (b) discharge the aforementioned employees and/or agents prior to October 2021; (c) ensure Plaintiff S.B. was safe and free from forcible actions negatively impacting her health and development while enrolled at Ocean Breeze Elementary, a Brevard County public school; (d) properly train employees and/or agents with regard to their provision of services to Plaintiffs; (e) properly supervise employees and/or agents in their provision of services to Plaintiffs; (f) ensure Plaintiff S.B. was not harmed, assaulted, or battered by employees; and (g) ensure that employees and/or agents received the proper training in use of masks and the consent necessary to forcibly mask a disabled child.

141.    As a direct and proximate result of the aforementioned acts and/or omissions of the Defendant School Entities, Plaintiffs have suffered,

both general and special damages, past and future, through deprivation of Constitutional rights, bodily injury and resulting pain and suffering, post-traumatic stress disorder, severe physical and emotional distress, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, aggravation of a pre-existing condition, medical expenses, and other special damages in the form of psychological counseling and tuition expenses.

## COUNT VIII – Violation of Rights Pursuant to Fla. Stat. §393.13 as Against all Defendants

142.    Plaintiffs hereby reassert by reference in this Count VIII the allegations of Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

143.    This Count VIII is brought against Defendants by Plaintiff S.B. pursuant to §393.13(5), Florida Statutes, for violation of the rights of a developmentally disabled person.

144.    At all times material hereto Plaintiff, S.B., was developmentally disabled by virtue of her severe developmental disabilities, including Down's Syndrome.

145.    At all times material hereto, the Defendants' were required to act in accordance with the rights and obligations described in §393.13, Fla. Stat. and as such owed a duty to Plaintiff S.B. to recognize, comply with, protect,

and take reasonable steps to ensure the rights and privileges of the developmentally disabled, including Plaintiff S.B., as set forth in Fla. Stat. §393.13, including, but not limited to, the following:

(a)      The right to dignity, privacy, and humane care, including the right to be free from abuse, including sexual abuse, neglect, and exploitation;

(b)      The right to receive services within available sources, which protect the personal liberty of the individual and which are provided in the least restrictive conditions necessary to achieve the purpose of the treatment;

(c)      The right to participate in an appropriate program of quality education and training services, within available resources, regardless of chronological age or degree of disability; and

(d)      The right to be free from harm, including unnecessary physical, chemical or mechanical restraint, isolation, excessive medication, abuse or neglect.

146.      Defendants breached their aforementioned duties and violated the aforementioned rights of Plaintiff S.B. by virtue of their conduct described hereinabove. In particular, Defendants failed to respect S.B.'s rights to dignity, privacy, and humane care, including the right to be free from abuse, and failed to ensure that Plaintiff, S.B., received a quality education free from abuse, neglect, unnecessary restraint, and/or isolation while enrolled at Ocean Breeze Elementary, a Brevard County public school.

147.     Defendants failed to act in good faith and with due care to ensure that Plaintiff's rights as a developmentally disabled person were not violated or infringed upon due to negligence, misfeasance, nonfeasance, or malfeasance.

148.     As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiff S.B. has suffered, both general and special damages, past and future, through deprivation of Constitutional rights, bodily injury and resulting pain and suffering, post-traumatic stress disorder, severe physical and emotional distress, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, aggravation of a pre-existing condition, medical expenses, and other special damages in the form of psychological counseling and tuition expenses.

149.     Plaintiffs also pray that this Court award damages in the form of reasonable attorneys' fees and costs to the extent allowed under the law pursuant to Fla. Stat. §393.13(5).

**COUNT IX - Violation of Civil Rights, 42 U.S.C. § 1983 –**
**Violation of Plaintiffs' Fundamental Right to Direct**
**the Medical and Mental Health Decision-Making for their Child as**
**Against All Defendants**

150.     Plaintiffs hereby reassert by reference in this Count IX the allegations of Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

151.     This Count IX is brought by Plaintiffs Mr. and Mrs. Steel, and not S.B.

152.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects the fundamental right of parents to direct the medical and mental health decision-making for their children. *Parham v. J.R.*, 442 U.S. 584, 99 S. Ct. 2493 (1979).

153.     By excluding the Steels from discussions regarding S.B.'s masking, Defendants made decisions that affected the physical and mental health of Plaintiffs' child in contravention to Plaintiffs' fundamental rights.

154.     Defendants have usurped Plaintiffs' responsibility for the health and well-being of their child and sought to supplant their authority for Plaintiffs' authority as fit parents to be the ultimate decisionmakers regarding the physical and mental health of their child, including decisions related to the masking of their child.

155.    Defendants violated Plaintiffs' fundamental right to make decisions regarding the mental, physical, and medical health of their child by physically tying a mask around S.B.'s head.

156.    Physically restraining a child, let alone developmentally disabled child, involves significant mental and physical health decisions affecting the well-being of the child, with potentially lifelong consequences. The physical restraint of S.B., and her parent's lack of notice and consent, goes against the Steel's fundamental right to parent S.B.

157.    Defendants acted with deliberate indifference to Plaintiffs' fundamental parental rights by forcing S.B. to wear a mask and violating her IEP that explicitly outlined her exemption from the mandate.

158.    Defendants' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

159.    As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiffs have suffered, both general and special damages, past and future, through deprivation of Constitutional rights, bodily injury and resulting pain and suffering, post-traumatic stress disorder, severe physical and emotional distress, pain and suffering, mental anguish, loss

of capacity for the enjoyment of life, aggravation of a pre-existing condition, medical expenses, and other special damages in the form of psychological counseling and tuition expenses.

160.     Plaintiffs also pray that this Court award damages in the form of reasonable attorneys' fees and costs as provided under 42 U.S.C. §§ 1983 and 1988.

### COUNT X – Violation of the Parents' Bill of Rights, Florida Statutes, Chapter 1014 as Against the School Entities

161.      Plaintiffs hereby reassert by reference in this Count X the allegations of Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

162.     This Count IX is brought by Plaintiffs Mr. and Mrs. Steel, and not S.B.

163.     Effective July 1, 2021, the Parents' Bill of Rights reserves all parental rights, including the rights to direct education, upbringing, moral or religious training, and to make health care decisions for their minor children to parents "without obstruction or interference from the state, any of its political subdivisions, any other governmental entity, or any other institution. Florida Statutes §1014.04.

164.     Florida Statutes §1014.03 provides:

The state, any of its political subdivisions, any other governmental entity, or any other institution may not infringe on the fundamental rights of a parent to direct the upbringing, education, health care, and mental health of his or her minor child without demonstrating that such action is reasonable and necessary to achieve a compelling state interest and that such action is narrowly tailored and is not otherwise served by a less restrictive means.

165.     The School Entities are political subdivisions of the state and/or governmental agencies subject to the Parents' Bill of Rights.

166.     The School Entities robbed the Steels of their ability to direct the upbringing, education, health care, and mental health of S.B. by tying a mask around her face, against both the Steel's wishes and S.B.'s IEP.

167.     The Defendant School Entities failed to provide notice to and obtain consent from the Steels regarding S.B.'s masking, directly in violation of the Parents' Bill of Rights.

168.     The Defendant School Entities cannot assert a compelling interest for disregarding Plaintiffs' fundamental right to direct the upbringing and education of their child.

169.     The Defendant School Entities' violation of the Parents' Bill of Rights caused undue hardship and irreparable harm to Plaintiffs.

170. As a direct and proximate result of the aforementioned acts and/or omissions of the Defendant School Entities, Plaintiffs have suffered, both general and special damages, past and future, through deprivation of Constitutional rights, bodily injury and resulting pain and suffering, post-traumatic stress disorder, severe physical and emotional distress, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, aggravation of a pre-existing condition, medical expenses, and other special damages in the form of psychological counseling and tuition expenses.

**COUNT XI – Violation of Fla. Stat. §1000.05, as Against all Defendants**

171. Plaintiffs hereby reassert by reference in this Count XI the allegations of Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

172. Florida Statute violation of Florida Statute §1000.05, the Florida Educational Equity Act, provides in pertinent part as follows:

> Discrimination on the basis of race, ethnicity, national origin, gender, disability, religion, or marital status against a student or an employee in the state system of public K-20 education is prohibited. No person in this state shall, on the basis of race, ethnicity, national origin, gender, disability, religion, or marital status, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any public K-20 education program or activity, or in any employment conditions or practices, conducted by a public educational institution that receives or benefits from federal or state financial assistance.

173.    The Florida Educational Equity Act, §1000.05, Florida Statutes, prohibits disability discrimination in public education. Specifically, it "prohibits discrimination based on race, national origin, sex, handicap, or marital status against any student or employee in the state system of public education." *Hawkins v. Sarasota County Sch. Ed.*, 322 F.3d 1279, 1286 (11th Cir. 2003).

174.    Despite S.B.'s IEP explicitly excusing her from wearing a mask at Ocean Breeze Elementary School, and S.B.'s teachers' knowledge that the face masking adversely affected S.B.'s speech and language impairments, the School Entities adopted and implemented a forcible mask mandate, and S.B.'s teachers then forcibly tied a mask around S.B.'s face without her parents' knowledge or consent, for approximately six weeks.

175.    S.B.'s disabilities were well known and documented by the Defendants, yet she was continually mistreated by the Defendants in violation of the Florida Educational Equity Act.

176.    S.B.'s medical conditions and contraindications for masking were ignored by the Defendants as they inhumanely implemented an unconstitutional Mask Mandate and ignored S.B.'s individualized needs as a disabled child.

177.     Anyone aggrieved by a violation of Fla. Stat. §1000.05 has a private right of action.

178.     Accordingly, Plaintiffs request this Court hold the Defendants responsible for violating the Florida Educational Equity Act and grant damages as it deems proper.

179.     As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiffs have suffered, both general and special damages, past and future, through deprivation of Constitutional rights, bodily injury and resulting pain and suffering, post-traumatic stress disorder, disfigurement, severe physical and emotional distress, pain and suffering. mental anguish, loss of capacity for the enjoyment of life, aggravation of a pre-existing condition, medical expenses, and other special damages in the form of psychological counseling and tuition expenses.

180.     Plaintiffs also pray that this Court award damages in the form of reasonable attorneys' fees and costs as provided in §1000.05(8).

**COUNT XII – Intentional Infliction of
Emotional Distress Against all Defendants**

181.     Plaintiffs hereby reassert by reference in this Count XII the allegations of Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

182.    Defendants' conduct, from the adoption and implementation of the Mask Mandate in violation of Florida law through the forced masking of S.B. for six weeks without her parents' consent, was intentional and reckless.

183.    Defendants took these actions intentionally and knew or should have known that emotional distress to S.B. would likely result.

184.    Defendants' conduct was outrageous, and beyond all bounds of decency in condoning forcible masking and then tying a mask to a seven-year-old girl's face who was and is non-verbal and left without the ability to protest or express her distress.

185.    Defendants' conduct caused emotional distress to S.B., and upon the discovery that the Defendants had been forcibly masking S.B. for six weeks, caused emotional distress to her parents.

186.    The distress caused by Defendants' conduct was severe, as exhibited by marked changes in S.B.'s behavior and attitude, and severe anxiety and stress in S.B.'s parents.

187.    Defendants caused severe emotional distress and pain and suffering, both physical and mental, and Plaintiffs pray for adequate compensatory damages.

188.     As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiffs have suffered, both general and special damages, past and future, through deprivation of Constitutional rights, bodily injury and resulting pain and suffering, post-traumatic stress disorder, severe physical and emotional distress, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, aggravation of a pre-existing condition, medical expenses, and other special damages in the form of psychological counseling and tuition expenses.

**COUNT XIII – Battery Against Kristen Godden and Nichole Dougherty**

189.     Plaintiffs hereby reassert by reference in this Count XIII the allegations of Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

190.     This Count XIII is brought by Plaintiffs as natural guardians of S.B.

191.     S.B.'s teachers, Ms. Godden and Ms. Dougherty, routinely tied a mask to S.B.'s face during the weeks leading up to S.B.'s parents' discovery of Ms. Godden's mask-tying practice on October 7, 2021. When not tied, S.B. was forcibly masked by Ms. Godden and Ms. Dougherty.

192.     Ms. Godden's and Ms. Dougherty's practice of tying a mask to S.B.'s face was harmful and offensive contact in that it was done without the consent of S.B.'s parents and was contrary to state law and the school's own policy.

193.     Further, Ms. Godden's and Ms. Dougherty's mask-tying practice was unpermitted and unprivileged contact with S.B., as it occurred at all times without her parents' consent.

194.     Ms.  Godden and Ms. Dougherty, in forcibly masking S.B., acted in bad faith and in a manner exhibiting wanton and willful disregard for S.B.'s human rights and safety.

195.     At all times relevant hereto, Ms. Godden and Ms. Dougherty intended to make the offensive and harmful contact with S.B.

196.     Ms. Godden and Ms. Dougherty acted with reckless disregard of the consequences of their forced masking and mask-tying practices, never checking with S.B.'s parents to obtain their consent or confirm that the mask-tying practice was not placing S.B.'s health in danger.

197.     As a direct and proximate result of the aforementioned acts and/or omissions of Defendants Ms. Godden and Ms. Dougherty, Plaintiffs have suffered, both general and special damages, past and future, through

deprivation of Constitutional rights, bodily injury and resulting pain and suffering, post-traumatic stress disorder, severe physical and emotional distress, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, aggravation of a pre-existing condition, medical expenses, and other special damages in the form of psychological counseling and tuition expenses.

## COUNT XIV – Fraudulent Concealment and Misrepresentation Against Kristen Godden and Nichole Dougherty

198.   Plaintiffs hereby reassert by reference in this Count XIV the allegations of Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

199.   S.B.'s teachers, Ms. Godden and Ms. Dougherty, routinely tied a mask to S.B.'s face during the weeks leading up to S.B.'s parents' discovery of Ms. Godden's mask-tying practice on October 7, 2021. When not tied, S.B. was forcibly masked by Ms. Godden and Ms. Dougherty.

200.   During this period of time, S.B.'s behavior regressed and she demonstrated severe distress by vomiting and increased frequency of accidents as more fully described in paragraphs 55 and 56, supra.

201.   After informing Plaintiffs Mr. and Mrs. Steel of S.B.'s vomiting and behavioral regressions, Defendants Ms. Godden and Ms. Dougherty

concealed the most likely cause of these regressions – their forced masking of S.B.

202. These Defendants intentionally concealed the masking of S.B. and failed to inform Mrs. Steel of their masking of S.B. when Mrs. Steel inquired into the likely explanations for S.B.'s vomiting and behavioral regressions.

203. These Defendants concealed the forced masking of S.B. intending that Plaintiffs would rely on the concealment and search for alternative explanations of Sofia's regression and unexplained (from the Steels' perspective) behavioral disturbances, including visits to S.B.'s therapists and physicians seeking appropriate diagnoses and/or explanations.

204. Plaintiffs Mr. and Mrs. Steel did rely on these Defendants' concealment and misrepresentation and kept S.B. out of school and consulted with treating providers seeking an explanation.

205. Ms. Godden and Ms. Dougherty, in concealing and misrepresenting their forced masking of S.B., acted in bad faith and in a manner exhibiting wanton and willful disregard for S.B.'s human rights and safety.

206. The Plaintiffs' reliance on these Defendants' concealment and misrepresentations caused damage in that Plaintiffs sought treatment, incurred

financial expense, and the relationship with their daughter S.B. was negatively impacted during this period and thereafter.

207.    As a direct and proximate result of the aforementioned acts and/or omissions of Defendants Ms. Godden and Ms. Dougherty, Plaintiffs have suffered, both general and special damages, past and future, through deprivation of Constitutional rights, bodily injury and resulting pain and suffering, post-traumatic stress disorder, severe physical and emotional distress, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, aggravation of a pre-existing condition, medical expenses, and other special damages in the form of psychological counseling and tuition expenses.

## Count XV – Defamation Against Jennifer Jenkins

208.    Plaintiffs hereby reassert by reference in this Count XV the allegations of Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

209.    Since the Plaintiff parents learned of the forced masking of S.B. without their consent and confronted the school and went public with the outrageousness of Defendants' conduct, Ms. Jenkins has engaged in a negative publicity campaign against Plaintiff Jeffrey Steel, causing him public hatred, contempt, and ridicule without justification.

210.    Ms. Jenkins has publicized her injurious falsehoods on Facebook and in other public forums, falsely claiming that Plaintiff Jeffrey Steel lied about his daughter S.B. being forcibly masked without his consent.

211.    Additionally, Ms. Jenkins has publicized and falsely asserted that Plaintiff Jeffrey Steel had and has no legal authority to make decisions as S.B.'s legal guardian, despite his status as such.

212.    Further, Ms. Jenkins has publicized knowingly false accusations that Plaintiff Jeffrey Steel invented the claim that his daughter S.B. had a mask tied to her face at Ocean Breeze Elementary School, despite a police investigation confirming those facts.

213.    Ms. Jenkins acted with knowledge and/or reckless disregard as to the falsity of the aforementioned public statements. Further, she acted negligently in attacking Plaintiff Jeffrey Steel on matters concerning a private person.

214.    Ms. Jenkins publicized these aforementioned false and defamatory statements on her personal Facebook page, and outside the scope of her duties as a Brevard County School Board member.

215.    Prior to Ms. Jenkins' publication of false statements, Plaintiff Jeffrey Steel was known as a person of good name and reputation in the general community and in his professional workplace.

216.   Ms. Jenkins' statements were made in writing and published via Facebook with the knowledge that they would be widely disseminated and would cause Plaintiff Jeffrey Steel reputational harm.

217.   It was reasonably understood by those who read or heard the statement that Ms. Jenkins' defamatory statements were about Plaintiff Jeffrey Steel and S.B.

218.   Ms. Jenkins' false and defamatory statements have harmed Plaintiff Jeffrey Steel and his reputation and have otherwise exposed him to distrust, hatred, contempt, and ridicule. Ms. Jenkins false and defamatory statements have a tendency to injure Plaintiff Jeffrey Steel in his office, occupation, business, or employment.

219.   As direct and proximate result of Ms. Jenkins' defamatory statements, Plaintiff Jeffrey Steel suffered presumed damages and actual damages, whether nominal, general, special, and/or emotional injury, including, but not limited to, insult, pain, embarrassment, humiliation, mental suffering, injury to his reputation, costs, and other out-of-pocket expenses, in an amount to be determined by the jury.

### PRAYER FOR RELIEF

**WHERFORE**, Plaintiffs respectfully request this Court enter an Order against Defendants: (1) awarding compensatory damages for deprivation of

Constitutional and statutory rights, medical expenses, psychological treatment, tuition expenses, physical and emotional distress, pain and suffering, mental anguish, loss of capacity for enjoyment of life, and diminished or reduced capacity for enjoyment of life; (2) awarding attorneys' fees and costs (3) awarding punitive damages; (4) that a jury be empaneled to hear this case; and (5) awarding any and all other relief that the Court deems just and proper.

DATED this 22nd day of March, 2022.

**ANDERSONGLENN LLP**

*/s/ Nicholas P. Whitney*
**Gregory A. Anderson, Esquire**
**Trial Counsel**
Florida Bar Number: 398853
gaanderson@asglaw.com
**Nicholas P. Whitney, Esquire**
Florida Bar Number: 119450
nwhitney@asglaw.com
10751 Deerwood Park Boulevard, #105
Jacksonville, Florida 32256
Telephone: (904) 273-4734
Facsimile:  (904) 273-4712
*Attorneys for Plaintiff*

## CERTIFICATE OF COUNSEL CONFERENCE

Pursuant to M.D. Fla. Loc. R.  3.01, the undersigned certifies that on March 18, 2022, the undersigned reached out to David Miklas, Esquire, Attorney for Defendants, Godden and Dougherty, Terry J. Harmon, Esquire and Robert J. Sniffen, Attorneys for Defendants Mullins, Belford, McDougall, and Jenkins, via e-mail, regarding the requested relief herein. Both counsel for Dougherty and Godden and remaining counsel objected to the proposed amendment but have been notified of its imminent filing. Plaintiffs further advised counsel for the Defendants of the nature of the

amendment concerning defamation and factual allegations relevant to claims of qualified immunity.

/s/ *Nicholas P. Whitney, Esquire*
**Nicholas P. Whitney, Esquire**

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of March, 2022, a true and correct copy of the foregoing was electronically filed in the U.S. District Court, Middle District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

**ANDERSONGLENN LLP**

/s/ *Nicholas P. Whitney*
**Gregory A. Anderson, Esquire**
**Trial Counsel**
Florida Bar Number: 398853
gaanderson@asglaw.com
**Nicholas P. Whitney, Esquire**
Florida Bar Number: 119450
nwhitney@asglaw.com
10751 Deerwood Park Boulevard, #105
Jacksonville, Florida 32256
Telephone: (904) 273-4734
Facsimile:  (904) 273-4712
*Attorneys for Plaintiffs*

60